IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Cornel Jeffries, et al.,                                          Case No. 3:09CV00430

           Plaintiffs

       v.                                                           ORDER

United States,

           Defendant

This is a "slip and fall" suit under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671 *et seq.* Plaintiffs Cornel and Shirley Jeffries allege that defendant United States breached its duty to plaintiffs, business invitees, by failing to remove snow and ice in the entrance of a Department of Veterans Affairs (VA) clinic.

Jurisdiction is proper under 28 U.S.C. § 1331.

Pending is defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(1) or 12(b)(6), or alternatively, motion for summary judgment under Fed. R. Civ. P. 56. [Doc. 16].

For the reasons discussed below, defendant's motion shall be granted.

**Background**

Cornel Jeffries is a retired United States military veteran. He is married to Shirley Jeffries and has a daughter, Iaesha. Mr. Jeffries receives medical care through the VA. His primary care physician works at the Toledo VA Clinic (clinic) in Toledo, Ohio. He has visited the clinic often.

On February 14, 2007, the clinic closed due to a large snowfall. Snow and ice covered the walkway to the clinic's handicap entrance.

On February 16, 2007, the clinic was open. Mr. Jeffries, accompanied by his wife and daughter, arrived at the clinic for an appointment. Mr. Jeffries slipped and fell on the sidewalk near the handicap entrance, fracturing his hip. A security guard helped Mr. Jeffries into the clinic after his fall and then returned outside to salt the sidewalk.

In March or early April, 2008, Mr. Jeffries filed a claim with the VA seeking damages for its alleged negligence.

On October 21, 2008, the VA denied Mr. Jeffries's claim.

**Standard of Review**

I consider defendant's motion as one for summary judgment, because the parties have submitted – and I have examined – materials outside the pleadings. Fed. R. Civ. P. 12(d). I have broad discretion to do so, especially where the plaintiff has an opportunity to respond because the defendant files its motion under both Rules 12 and 56. *Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000).

A party is entitled to summary judgment under Rule 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, a court accepts the opponent's evidence as true and construes all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex*, *supra*, 477 U.S. at 323.

## Discussion

### I. Mrs. Jeffries's Claim

Defendant argues that I must dismiss Mrs. Jeffries's loss-of-consortium claim for lack of jurisdiction because she failed to present her claim to the VA.

Plaintiff concedes that, due to Mrs. Jeffries's failure to file a separate administrative claim, her loss of consortium claim is subject to dismissal.

### II. Mr. Jeffries's Claim

There is no dispute that Mr. Jeffries properly submitted his administrative claim.

In assessing a tort claim against the United States for money damages, I apply "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Under Ohio negligence law, a plaintiff must show: 1) the defendant owed the plaintiff a duty; 2) breach of the duty; and 3) the breach proximately caused the plaintiff's injuries. *E.g.*, *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St. 3d 120, 122 (2009). When, as here, "the alleged negligence occurs in the premises-liability context, the applicable duty is determined between the landowner and the plaintiff." *Id.* (internal citation omitted).

#### A. Duty

Defendant denies owing Mr. Jeffries any duty *vis-a-vis* the condition of the sidewalk:

3

"Defendant was not the owner of the property where Plaintiff Cornell Jeffries fell. . . . The lease provisions provided that premises maintenance including access were the responsibility of Lessor Medical College of Ohio." [Doc. 16, at 8].

Plaintiff responds that liability centers around control of premises, rather than ownership, and "the lessee of a premises, having entire control of them, is the owner so far as third persons are concerned." [Doc. 18, at 7].

Under Ohio law:

> A lessor is not liable for injuries to a third party in the absence of authority to exercise control over the premises to the exclusion of any control by the lessee. The control necessary as the basis for tort liability implies the power and the right to admit people to the premises and to exclude people from it[.]

*Wills v. Frank Hoover Supply*, 26 Ohio St. 3d 186, 188 (1986) (internal citations omitted).

Here, Mr. Jeffries presents evidence of defendant's control of the premises. When Iaesha sought assistance, one of defendant's agent, a contract security guard, responded, helped Mr. Jeffries and salted the walkway. This creates a genuine issue of material fact as to whether defendant controlled the premises.

If consequently defendant owed Mr. Jeffries a duty, it was, given Mr. Jeffries's status as a business invitee, "to exercise ordinary care and to protect [the invitee] by maintaining the premises in a safe condition." *Lang*, *supra*, 122 Ohio St. 3d at 123.

That, and no more, is what defendant owed Mr. Jeffries. Ohio does not impose a greater obligation on a defendant due to a plaintiff's age and infirmities. *Stinson v. Cleveland Clinic Found.*, 37 Ohio App. 3d 146, 148 (1987) (rejecting plaintiff's claim "that a hospital owes a 'higher' standard of care simply because some persons going to the hospital are elderly, sick or otherwise infirm to varying degrees").

**B. Breach**

Mr. Jeffries asserts that his fall in front of the clinic stemmed from defendant's breach of its duty to him. Defendant claims it breached no duty and is not liable for plaintiff's injuries.

A landowner's duty to protect business invitees depends on the foreseeability of the harm, *i.e.*, whether defendant should reasonably have known and anticipated the act which resulted in Mr. Jeffries's injury. *See, e.g.*, *Townsley v. Cincinnati Gardens, Inc.*, 39 Ohio App. 2d 5, 7-8 (1974).

This requires the defendant to "maintain[] the premises in a reasonably safe condition so that [business invitees] are not unnecessarily and unreasonably exposed to danger." *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St. 3d 203, 203 (1985).

The landowner must also "warn [the invitee] of latent dangers of which the [landowner] knows, [and the landowner] must also inspect the premises to discover possible dangerous conditions of which [the landowner] does not know, and take reasonable precautions to protect the invitee[.]" *Perry v. Eastgreen Realty Co.*, 53 Ohio St. 2d 51, 52 (1978) (internal quotation and citation omitted). But no landowner is an insurer of the safety of invitees. *Id.*

A landowner, moreover, "is under no duty to protect business invitees from dangers which are known to such invitee or are *so open and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them.*" *Paschal*, *supra*, 18 Ohio St. 3d at 203-04 (emphasis added) (internal quotation and citation omitted).

Mr. Jeffries fell on snow or ice. To succeed on his claim, Mr. Jeffries must show his fall did not result from a "natural accumulation[] of ice and snow," because such accumulations are considered "obvious and apparent." *Brinkman v. Ross*, 68 Ohio St. 3d 82, 84 (1993) (internal

5

quotation and citation omitted). The rationale of this exception is that "everyone is assumed to appreciate the risks associated with natural accumulations of ice and snow, and therefore, everyone is responsible to protect himself or herself against the inherent risks presented by [such] accumulations[.]" *Id.*

Mr. Jeffries claims that the "natural accumulation" doctrine does not apply to him because: 1) the accumulation of snow was "non-natural" because of imperfections in the sidewalk; 2) the imperfections created a "substantially more dangerous" condition than normal; and 3) he did not voluntary assume the risk of crossing the snow and ice because he had to attend his appointment.

### 1. Unnatural Accumulation

Mr. Jeffries asserts:

> The joints between the cement slabs [leading to the handicapped entrance] were uneven and caused ice and snow to accumulate and remain on and around the entrance. Furthermore, several of the original slabs had been cut out and replaced with round openings presumably to accommodate trees or bushes. When the original slabs were removed, the new slabs that were installed appear to be significantly higher than the pre-existing sidewalk . . . and as a result, the VA Clinic's sidewalk construction . . . led to the unnatural pooling of water, ice, and snow on the entryway.

[Doc. 18, at 9-10].

To support this contention, plaintiff offers, *inter alia*, photos of the sidewalk's condition some time after the accident, when snow and ice no longer concealed its condition.

Defendant protests that Mr. Jeffries raises his contention regarding the imperfections in the sidewalk for the first time in his opposition to defendant's motion for summary judgment. Defendant further argues that the post-accident photographs do not show the sidewalk's condition when plaintiff fell.

In any event, defendant argues, any defects are so minor that they could not have proximately caused Mr. Jeffries's injuries.

Mr. Jeffries has adequately laid the foundation for the photographs, which simply show the unevenness of the sidewalk surface, as it would have existed *before* being covered by snow and ice. The photos show what they show, and are probative as to the condition of the sidewalk before snow and ice covered it.

On its claim of untimeliness, defendant is, however, correct. The Sixth Circuit does not allow parties to advance new contentions in opposition to a summary judgment motion after ample time for discovery and amending the complaint. *Tucker v. Union of Needletrades, Indust. & Textile Employees*, 407 F.3d 784, 787-89 (6th Cir. 2005); *see also Lally v. BP Prods. N. Amer., Inc.*, 615 F. Supp. 2d 654, 659 (N.D. Ohio 2009) ("Plaintiffs may not expand the scope of their claims in an opposition to a summary judgment motion." (citing *Tucker*, *supra*, 407 F.3d at 788)). The court in *Tucker* noted that "[t]o permit a plaintiff to do otherwise would subject defendants to unfair surprise." 407 F.3d at 788. The court there, finding the plaintiff's year-long delay between filing her complaint and raising her novel argument too long, affirmed the district court's refusal to entertain the new argument. *Id.* at 789.

Here, there is no mention of the uneven surface argument in any documents submitted until approximately two years after Mr. Jeffries's fall, and one year after Mr. Jeffries submitted his complaint. I therefore find Mr. Jeffries's uneven sidewalk argument improperly raised.

This contention fails, in any event, on the merits.

A landowner may be liable for injuries sustained due to *unnatural* accumulations of snow or ice. *Bittinger v. Klotzman*, 113 Ohio App. 3d 847, 852 (1996). An unnatural accumulation is

7

one "where there is evidence of an intervening act by the landlord/owner which perpetuates or aggravates the pre-existing, hazardous presence of ice and snow." *Id.*; *see also Porter v. Miller*, 13 Ohio App. 3d 93, 95 (1983) (defining an "unnatural accumulation" as one caused by "factors *other than* the inclement weather conditions of low temperature, strong winds and drifting snow, *i.e.*, . . . man-made"). Simple failure to clear away snow or ice does not suffice. *Porter*, *supra*, 13 Ohio App. 3d at 95.[1]

Ohio courts have consistently held, moreover, that slight imperfections in a sidewalk – such as those pictured in Mr. Jeffries's photos – do not constitute "unnatural accumulations" when covered with ice or snow:

> [T]o find that [a dip or depression in a sidewalk] results in an unnatural accumulation of ice and snow would ignore two essential yet simple realities. First, snow and ice are part of wintertime life in Ohio and hazardous winter weather conditions and their attendant dangers are to be expected in this part of the country. . . . Second, every sidewalk, street or parking lot cannot be expected to be completely free of all constructional imperfections, defects or blemishes. To hold otherwise would cause every builder of a sidewalk as well as the abutting property owner and municipality in which it is located to become an absolute insurer.

*Dailey v. Mayo Family L.P.*, 115 Ohio App. 3d 112, 116 (1996) (quoting *Plymale v. Sabina Pub. Library*, 1987 WL 30343, at *2 (Ohio Ct. App.) (unpublished disposition)); *see also Jeswald v. Hutt*, 15 Ohio St. 2d 224, 226 (1968) (holding a hump in a parking lot covered with snow to constitute a *natural* accumulation because "[i]t was the kind of condition which comes within the classification of a 'minor imperfection' – one reasonably to be anticipated on a traveled surface, and for the existence of which there is ordinarily no liability"); *Duncan v. Hallrich, Inc.*, 2007

---

[1] Because this exception to the natural accumulation doctrine only applies when there are intervening human acts, any argument that failure to salt the sidewalk, or that a particularly severe snow storm, created a non-natural accumulation must fail. *Porter*, *supra*, 13 Ohio App. 3d at 95.

WL 1732287, at *3 (Ohio Ct. App.) (unpublished disposition) ("This court and other courts have held that an accumulation of ice does not become an unnatural accumulation simply by virtue of water collecting in a depression in a sidewalk and subsequently freezing.").

Mr. Jeffries has also submitted no evidence, aside from the photos, showing that the sidewalk imperfections caused his injury.

### 2. Substantially More Dangerous

Mr. Jeffries alleges further that the defects in the sidewalk "created a condition substantially more hazardous than a visitor should anticipate" and that defendant had notice of it. [Doc. 18, at 9].

Defendant repeats the procedural and evidentiary objections discussed above in the unnatural accumulation section, and further argues that Mr. Jeffries has not shown the defects were significant.

Under Ohio law, the second exception to the natural accumulation doctrine requires a plaintiff to show that the landowner: 1) "ha[d] notice, actual or implied, that [2)] the natural accumulation of snow and ice on [the landowner's] premises has created there a condition substantially more dangerous to his business invitees than they should have anticipated by reason of their knowledge of conditions prevailing generally in the area." *Debie v. Cochran Pharmacy-Berwick, Inc.*, 11 Ohio St. 2d 38, 41 (1967).

First, a substantially more dangerous condition exists when the ice and snow conceal what otherwise would have been considered an open and obvious danger. *Mikula v. Tailors*, 24 Ohio St. 2d 48, 57 (1970). Ohio courts have found such conditions only given significant concealed dangers. *Compare id.* at 57 (holding a seven-inch hole in a parking lot covered with

9


snow to constitute such a substantially more dangerous condition); *Koss v. Cleveland Holding Corp.*, 1975 WL 182913, at *2 (Ohio Ct. App.) (unpublished disposition) (holding that snow covering an eight-inch raised bump created a substantially more dangerous condition), *with Juredine v. Heather Hill, Inc.*, 1993 WL 130101, at *2 (Ohio Ct. App.) (unpublished disposition) (holding that "indentations" in a gravel parking lot did not create a substantially more dangerous condition when covered with ice).

Mr. Jeffries has improperly made the sidewalk imperfection argument for the first time in his opposition to defendant's summary judgment motion. *See Tucker*, *supra*, 407 F.3d at 788. Even were I to consider the argument, however, Mr. Jeffries has failed to prove a genuine issue of material fact regarding the sidewalk's creation of a substantially more dangerous condition. The sort of sidewalk imperfections shown in the photographs are minor, and do not rise to the level of a substantially more dangerous condition of which Mr. Jeffries would be unaware. This is especially true in light of his numerous previous visits to the clinic. *See Mikula*, *supra*, 24 Ohio St. 2d at 57; *cf. Jeswald*, *supra*, 15 Ohio St. 2d at 226. Mr. Jeffries, moreover, has failed to show that defendant had actual or implied notice of such condition.

Mr. Jeffries has thus failed to show his fall resulted from a substantially more dangerous condition.

### 3. No Reasonable Alternative

Mr. Jeffries argues lastly that the natural accumulation doctrine does not apply because it relies on voluntary assumption of risk, and he had no choice but to attend his doctor's appointment. Mr. Jeffries claims that he: 1) had a general right to seek medical care when needed; 2) could not cancel less than twenty-four hours before his appointment, and thus had to

snow to constitute such a substantially more dangerous condition); *Koss v. Cleveland Holding Corp.*, 1975 WL 182913, at *2 (Ohio Ct. App.) (unpublished disposition) (holding that snow covering an eight-inch raised bump created a substantially more dangerous condition), *with Juredine v. Heather Hill, Inc.*, 1993 WL 130101, at *2 (Ohio Ct. App.) (unpublished disposition) (holding that "indentations" in a gravel parking lot did not create a substantially more dangerous condition when covered with ice).

Mr. Jeffries has improperly made the sidewalk imperfection argument for the first time in his opposition to defendant's summary judgment motion. *See Tucker*, *supra*, 407 F.3d at 788. Even were I to consider the argument, however, Mr. Jeffries has failed to prove a genuine issue of material fact regarding the sidewalk's creation of a substantially more dangerous condition. The sort of sidewalk imperfections shown in the photographs are minor, and do not rise to the level of a substantially more dangerous condition of which Mr. Jeffries would be unaware. This is especially true in light of his numerous previous visits to the clinic. *See Mikula*, *supra*, 24 Ohio St. 2d at 57; *cf. Jeswald*, *supra*, 15 Ohio St. 2d at 226. Mr. Jeffries, moreover, has failed to show that defendant had actual or implied notice of such condition.

Mr. Jeffries has thus failed to show his fall resulted from a substantially more dangerous condition.

### 3. No Reasonable Alternative

Mr. Jeffries argues lastly that the natural accumulation doctrine does not apply because it relies on voluntary assumption of risk, and he had no choice but to attend his doctor's appointment. Mr. Jeffries claims that he: 1) had a general right to seek medical care when needed; 2) could not cancel less than twenty-four hours before his appointment, and thus had to

attend his appointment; or 3) had missed a prior appointment, and thus for continued coverage under his VA benefits, had to attend his appointment.

Mr. Jeffries points to two cases to support his argument: *Mizenis v. Sands Motel, Inc.*, 50 Ohio App. 2d 226 (1975), and *Hammon v. Moon*, 8 Ohio App. 3d 66 (1982). In each case, the court held that an invitee does not necessarily assume the risk of navigating a natural accumulation of snow or ice where he or she has no alternative but "to tak[e] his [or her] chances." *Mizenis*, *supra*, 50 Ohio App. 2d at 231; *see also Hammon*, *supra*, 8 Ohio App. 3d at 68-70.

The court in *Mizenis* held that a motel guest had a right to leave his room via "the only means of ingress and egress" after asking the motel manager for assistance, because "[p]laintiff's only other alternative for protecting himself, too absurd to suggest as a practical remedy, was to stay in his motel room until the spring thaws melted the snow and ice." 50 Ohio App. 2d at 230. In *Hammon*, the court held that "plaintiff was entitled to go home after work and was not required to remain in the office until such time as defendant finally caused the snow and ice to be removed from the back steps[.]" 8 Ohio App. 3d at 69.

Unlike the plaintiffs in *Mizenis* or *Hammon*, Mr. Jeffries was not trapped inside the hospital, seeking to leave after his appointment. He wanted to *enter* the hospital. Mr. Jeffries also does not state that he sought assistance in finding another way to enter the building, or that he sought assistance in entering the building at all. There is, further, no evidence that Mr. Jeffries tried to reschedule his appointment and defendant refused.

I find Mr. Jeffries's circumstances distinguishable from those in *Mizenis* or *Hammon*.

Mr. Jeffries has thus failed to show that he had no reasonable alternative to crossing the sidewalk, and that he did not voluntarily assume the risk of doing so.[2]

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT defendant's motion for summary judgment [Doc. 16] be, and the same hereby is, granted.

So ordered.

> s/James G. Carr
> James G. Carr
> Chief Judge

---

[2] Because Mr. Jeffries fails to show defendant breached its duty to him, I need not reach the issue of whether he has adequately shown causation.